Filed 3/20/26  P. v. Arcos CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D084938 |
| Plaintiff and Respondent, | (Super. Ct. No. INF1200051) |
| v. | |
| ROLAND JIMENEZ ARCOS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Riverside County, David A. Gunn, Judge.* Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Arlene A. Sevidal, Michael D. Butera and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

---

*      Retired Judge of the Orange Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

In 2015, a jury convicted Roland Jimenez Arcos of first degree murder and street terrorism. Thereafter, the trial court sentenced Arcos to 52 years to life in state prison. In 2022, after changes to the state's murder laws, Arcos filed a petition for resentencing under Penal Code section 1172.6.[1] In 2024, the trial court summarily denied the petition.

On appeal from that denial, Arcos argues the trial court erred by concluding he was ineligible for relief as a matter of law at the prima facie stage of the proceeding because the record of conviction did not conclusively establish the jury found he harbored the requisite intent to kill. As we shall explain, we reject Arcos's argument and affirm the order denying his petition for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

The following short summary of the facts is taken from our prior nonpublished opinion affirming Arcos's judgment, *People v. Magallanes, et al.* (March 27, 2018, D072864) (*Magallanes*).

"On New Year's Eve in 2011, Angela P. walked with some of her children and their friends to a convenience store to purchase food. The group included Angela P., her two minor sons and daughter, and Angela P.'s daughter's boyfriend Marcello Moscozo. As they walked, they came upon a white Cadillac driven by a Hispanic female. Angela P. heard a male in the car, Johnathan Villafan, shout 'Brownstown,' which was the name of a local criminal street gang of which Johnathan Villafan was a member. Angela P. also heard someone from the car say another derogatory term relating to a rival gang. She told everyone to stay quiet and to keep walking. Johnathan Villafan ran to the home of a fellow gang member, Raymond Gallardo, who

---

1    Subsequent undesignated statutory references are to the Penal Code.

then went to the convenience store and told one of Angela P.'s sons that Gallardo's friends were going to shoot them.

"Angela P. and the others started walking home when they were approached by a truck driven by Erik Godina, who was then a Brownstown gang member. In the truck with Godina were Magallanes, Arcos and Jesse Villafan, also Brownstown gang members. One of the passengers, who Angela P. later identified as Magallanes, threatened Angela P. with a gun after invoking the name Brownstown but then reentered the truck, which left. After Angela P.'s group ran and scattered throughout a trailer park, Godina and the other gang members returned in the truck. Magallanes exited and began shooting at Angela P. and the others. Finally, Moscozo pushed Angela P. aside and ran toward Magallanes. Moscozo's body was later found near a fence in the trailer park; he died from multiple gunshots to his head, neck and back.

"Godina, who had entered into a plea agreement in exchange for his testimony, testified that after the shooting, Magallanes admitted he ran after an individual in the trailer park and shot him in the back and head several times." (*Magallanes, supra*, D072864.)

On August 24, 2015, the Riverside County District Attorney filed an amended information charging Arcos and Magallanes with murder (§ 187, subd. (a); count 1), attempted murder (§§ 664, 187; counts 2–5); and street terrorism (§ 186.22, subd. (a); count 6). As to count 1, the information alleged Arcos and Magallanes were principals, and at least one principal personally and intentionally discharged a firearm that proximately caused great bodily injury and death (§ 12022.53, subd. (d)). As to counts 2 through 5, the information alleged Arcos personally and intentionally discharged a firearm (§ 12022.53, subds. (c), (e)); and as to counts 1 through 5, the information also

3

alleged the crimes were committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)(C).

After deliberations, the jury found Arcos guilty of first degree murder and street terrorism and found true the firearm and street terrorism enhancements alleged as to count 1. On February 5, 2016, the trial court sentenced Arcos to 52 years to life in state prison. The sentence was comprised of two consecutive 25-year-to-life terms for count 1 and the firearm enhancement, plus a two-year term for count 6.

On April 18, 2022, Arcos filed a petition for resentencing under former section 1170.95, now section 1172.6. (Stats. 2022, ch. 58, § 10.) The People did not file a written opposition to the petition, but at the prima facie hearing on August 9, 2024, opposed the motion and asked the court to take judicial notice of the jury instructions provided during the underlying murder trial. At the hearing, the trial court granted the request for judicial notice and denied the petition. Arcos filed a timely notice of appeal from the denial order.

DISCUSSION

I

"The Legislature enacted Senate Bill [No.] 1437 'to more equitably sentence offenders in accordance with their involvement in homicides.' (Stats. 2018, ch. 1015, § 1(b).) The Legislature recognized, 'It is a bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability.' (*Id.*, § 1(d).) With this purpose in mind, Senate Bill [No.] 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a

4

major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1(f).) Outside of the felony-murder rule, 'a conviction for murder requires that a person act with malice aforethought. A person's culpability for murder must be premised upon that person's own actions and subjective mens rea.' (*Id.*, § 1(g).)" (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)

"Senate Bill [No.] 1437 altered the substantive law of murder in two areas. First, with certain exceptions, it narrowed the application of the felony-murder rule by adding section 189, subdivision (e) to the Penal Code. (Stats. 2018, ch. 1015, § 3.) Under that provision, 'A participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' (§ 189, subd. (e).)" (*Curiel, supra*, 15 Cal.5th at p. 448.)

"Second, Senate Bill [No.] 1437 imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. (§ 188, subd. (a)(3).) 'Malice shall not be imputed to a person based solely on his or her participation in a crime.' (*Ibid.*) One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine. ([*People v.*] *Gentile* [(2020)] 10 Cal.5th [830,] 846.) '[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense

5

he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the "natural and probable consequence" of the crime the accomplice aided and abetted (i.e., the nontarget offense).  [Citation.]  A nontarget offense is the natural and probable consequence of a target offense "if, judged objectively, the [nontarget] offense was reasonably foreseeable."  [Citation.]  The accomplice need not actually foresee the nontarget offense.  "Rather, liability ' "is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted." ' " ' (*Id*. at pp. 843–844.)  Thus, under prior law, a defendant who aided and abetted an intended assault could be liable for murder, if the murder was the natural and probable consequence of the intended assault.  (*Id*. at p. 844.)  The defendant need not have intended the murder or even subjectively appreciated the natural and probable consequences of the intended crime.  (*Id*. at pp. 843–844.)  Senate Bill [No.] 1437 ended this form of liability for murder."  (*Curiel, supra*, 15 Cal.5th at p. 449.)

"Senate Bill [No.] 1437 also enacted former section 1170.95, which created a procedural mechanism 'for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief' where the two substantive changes described above affect a defendant's conviction."  (*Curiel, supra*, 15 Cal.5th at p. 449.)  Two years later, by the passage of Senate Bill No. 775 on October 5, 2021, the Legislature expanded the scope of the law "to encompass, among other things, murder convictions 'under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime.*' "  (*People v. Langi* (2022) 73 Cal.App.5th 972, 978

6

(*Langi*).) Senate Bill No. 775 also expanded the law to include those convicted of attempted murder under a theory of liability abrogated by Senate Bill [No.] 1437, codified "certain aspects of [the Supreme Court's] decision in [*People v. Lewis* (2021) 11 Cal.5th 952], and clarif[ied] the procedure and burden of proof at the evidentiary hearing stage of proceedings. (Stats. 2021, ch. 551, § 1.)" (*Curiel*, at p. 449.) Senate Bill No. 775 became effective on January 1, 2022. (Stats. 2021, ch. 551.) The following year, the Legislature renumbered section 1170.95 to section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.)

The resentencing "process begins with the filing of a petition containing a declaration that all requirements for eligibility are met ([§ 1172.6], subd. (b)(1)(A))." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' (§ 1172.6, subd. (c); [citation].) If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. (See § 1172.6, subd. (c); [citation].)" (*Strong*, at p. 708.) If the petitioner states a prima facie case for relief, the court must issue an order to show cause and, in most cases, set an evidentiary hearing to determine whether to vacate the conviction, recall the sentence, and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c), (d)(1).)

"In determining whether the petitioner has carried the burden of making the requisite prima facie showing he falls within the provisions of section 1172.6 and is entitled to relief, the superior court properly examines the record of conviction, 'allowing the court to distinguish petitions with

7

potential merit from those that are clearly meritless.' (*Lewis, supra*, 11 Cal.5th at p. 971.) However, 'the prima facie inquiry under [section 1172.6,] subdivision (c) is limited. … " '[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause.' " … "However, if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.' " ' " (*People v. Patton* (2023) 89 Cal.App.5th 649, 655–656, fn. omitted, review granted June 28, 2023, S279670.)

"We independently review a trial court's determination on whether a petitioner has made a prima facie showing." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

## II

Arcos asserts the trial court erred by concluding he did not make a prima facie case for relief. Specifically, he contends the jury instructions in his case left open the possibility that the jury convicted him of first degree murder without finding he harbored the specific intent to kill, because the aiding and abetting instruction did not " 'state that the aider and abetter must himself have known that the act he aided was life-threatening, or that he must himself have acted with indifference to human life.' " In support of this assertion, Arcos relies on *People v. Powell* (2021) 63 Cal.App.5th 689 (*Powell*), *Langi, supra*, 73 Cal.App.5th 972, and *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*).

These cases, however, have critical differences from Arcos's case. *Powell* and *Langi* considered convictions for aiding and abetting an implied

8

malice murder, not premeditated first degree murder, while *Maldonado* addressed aiding and abetting liability for first degree murder based on lying in way, not premeditation. (See *Powell, supra*, 63 Cal.App.5th at pp. 710–718 [holding instructional error related to a conviction for aiding and abetting second degree implied malice murder was harmless]; *Langi, supra*, 73 Cal.App.5th at p. 976 [reversing denial of section 1172.6 petition for conviction for aiding and abetting implied malice murder where instructions failed to foreclose conviction based on imputed malice]; and *Maldonado, supra*, 87 Cal.App.5th at p. 1262 [reversing denial of section 1172.6 petition where instructions did not foreclose imputation of malice because " '[i]f the act which the perpetrator intends to commit while lying in wait results in a killing which satisfies the elements of murder, it is immaterial whether the perpetrator intended to kill' "].) In each of these three cases, the Court of Appeal concluded the jury instructions did not foreclose the possibility that the defendant was convicted without the jury finding he harbored the requisite intent to kill. Here, however, the jury instructions required the jury to find Arcos himself harbored the specific intent to kill or to aid and abet a killing.

Arcos's jury received standard aiding and abetting instructions, CALCRIM Nos. 400 and 401; homicide and murder instructions, CALCRIM Nos. 500 and 520; and an instruction on first degree—willful, deliberate and premeditated—murder, CALCRIM No. 521. Critically, at trial, the jury was not instructed on the natural and probable consequences doctrine, felony murder, or on any other theory of liability that would have allowed the jury to impute malice to Arcos. The jury was instructed that murder requires malice aforethought; the first degree murder at issue in this case required

9

premeditation; and, if the jury could not find premeditation to kill beyond a reasonable doubt, it could not convict Arcos of first degree murder.[2]

Further, the jury was correctly instructed on aiding and abetting liability, which required the jury to find Arcos guilty as an aider and abettor

_____

[2]     CALCRIM No. 500 stated: "Homicide is the killing of one human being by another.  Murder and Manslaughter are types of homicide.  The defendant is charged with murder.  Manslaughter is a lesser offense to murder."

CALCRIM No. 520 stated: "The defendant is charged in Count 1 with murder in violation of Penal Code section 187.  [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant committed an act that caused the death of another person; [¶] AND [¶] 2. When the defendant acted, he had a state of mind called malice aforethought. [¶] There are two kinds of malice aforethought, express malice and implied malice.  Proof of either is sufficient to establish the state of mind required for murder. [¶] The defendant acted with express malice if he unlawfully intended to kill. [¶] . . . [¶] If you decide that the defendant committed murder, it is murder of the second degree, unless the People have proved beyond a reasonable doubt that it is murder of the first degree as defined in CALCRIM No. 521."

CALCRIM No. 521 stated: "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation.  The defendant acted willfully if he intended to kill.  The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill.  The defendant acted with premeditation if he decided to kill before completing the acts that caused death. [¶] … [¶] The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime.  If the People have not met this burden, you must find the defendant not guilty of first degree murder and the murder is second degree murder."

10

only if it concluded he personally harbored the requisite intent to kill.[3]  The jury was told that, to convict Arcos as an aider and abettor, it had to find that he knew of the direct perpetrator's unlawful purpose to kill (because that was the only target offense), and Arcos, with the intent to commit, encourage, or facilitate the commission of the killing, aided, abetted, promoted, or instigated the killing.  Unlike *Powell*, *Langi*, and *Maldonado*, in Arcos's case there was no potential target offense aside from intentional murder.  (See *Powell, supra*, 63 Cal.App.5th at p. 714 [aiding and abetting instruction was error because it failed to tell jury the aider and abetter must have intended to

---

[3]     CALCRIM No. 400 stated: "A person may be guilty of a crime in two ways.  One, -he or she may have directly committed the crime.  I will call that person the perpetrator.  Two, he or she may have aided and abetted a perpetrator, who directly committed the crime.  [¶] A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator."

CALCRIM No. 401 stated: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.  [¶] If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor.  [¶] If you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor.  However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor."

11

aid murder, not just an act "the natural and probable consequences of which are dangerous to human life"]; *Langi, supra*, 73 Cal.App.5th at p. 982 ["Since the perpetrator's purpose need not have been to kill the victim [rather only to strike or injure him], the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill."]; *Maldonado, supra*, 87 Cal.App.5th at p. 1262 ["Unlike first degree premeditated murder, 'nothing in section 189 requires the lying in wait to have been done with the intent to kill.' "].)

Based on the instructions provided to Arcos's jury, it convicted him of first degree murder. The jury necessarily found Arcos personally harbored intent to kill, either as the direct perpetrator or as a direct aider and abettor. The instructions did not leave open the possibility of imputing malice to him solely based on the state of mind of Magallanes. Because of this, Arcos is ineligible for relief as a matter of law, and the trial court properly denied his section 1172.6 petition. (See, e.g., *People v. Daniel* (2020) 57 Cal.App.5th 666, 677 [defendant ineligible for relief where the jury was not instructed on felony murder or the natural and probable consequences doctrine and, therefore, was not convicted on any theory involving the imputation of malice].)

### DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:

DATO, J.

CASTILLO, J.

12